CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 3 1 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| CHERYL DRUMHELLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:18CV00117 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FOOD LION, LLC, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Cheryl Drumheller filed this action against her former employer, Food Lion, LLC ("Food Lion"), asserting claims under the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Virginia law. Food Lion has moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the motion will be granted in part and denied in part.

### Background

The following factual allegations, taken from the amended complaint, are accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

In September of 1995, Drumheller was hired to work as a part-time deli clerk at the Food Lion store in Palmyra, Virginia. Am. Compl. ¶ 1, Dkt. No. 13. Drumheller accepted a full-time position in the meat department in 1999. Id. She remained in that position until 2009, when she

---

[1] Food Lion also moved to dismiss the original complaint. Because Drumheller timely filed an amended complaint as a matter of right, the amended complaint superseded the original complaint, rendering it of "no effect." Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017) (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 573 (4th Cir. 2001)). Consequently, the motion to dismiss the original complaint will be dismissed as moot.

was diagnosed with lupus and could no longer work in cold temperatures. Id. At that point, Drumheller returned to work in the deli. Id.

In 2012, Drumheller's son was killed in a car accident. Id. Drumheller was subsequently diagnosed with chronic fatigue syndrome, migraine headaches, fibromyalgia, and other ailments. Id. Drumheller's "conditions were managed with medications that she was required to take daily," and she continued to work at the Food Lion store for the next five years. Id.

Drumheller asserts that by late 2016, her work environment had become "toxic and hostile." Id. ¶ 9. During this time, she continued to suffer from lupus, fibromyalgia, and chronic fatigue syndrome, which caused her "brain [to] not work well sometimes." Id.; see also id. (describing her symptoms as "fibro fog") (internal quotation marks omitted). Drumheller alleges that Food Lion managers and employees "were well aware of [her] conditions and disabilities," and that they "increasingly harassed" her throughout 2016 and 2017. Id. ¶¶ 9–10.

According to the amended complaint, "[o]ne Food Lion employee in particular, Judy Ruggiero, . . . had it out for [Drumheller]." Id. ¶ 10. Drumheller describes a number of incidents in which Ruggiero spoke to her in a hostile and demeaning manner. For instance, when Drumheller helped the customer service manager, Katija Simpson, walk to the managers' office after Simpson fell at work, Ruggiero yelled at Drumheller for being in the office and told her that she should be working. Id. On another occasion, Ruggiero loudly screamed at Drumheller in front of a customer. Id. ¶ 11. When the customer asked Drumheller whether she was okay, Drumheller "started crying because she was the only one in the store that was treated this way by Ruggiero and by Food Lion's managers." Id.

Drumheller eventually reported Ruggiero's conduct to the acting store manager, Wes Hatcher. In response, Food Lion moved Drumheller to a different shift that began at 3:00 p.m.

2

Drumheller asserts that the shift change was made in retaliation for reporting Ruggerio and that "Food Lion knew [Drumheller] could not physically or emotionally work [that shift] due to her disabilities." Id. ¶ 14.

Drumheller then spoke to a senior manager, Junior Castle, regarding the "hostile work environment." Id. ¶ 16. Rather than investigate the matter, "Castle proceeded to belittle and criticize [Drumheller]," telling her that other employees had informed him that they did not like her. Id.

Drumheller alleges that her health suffered as a result of being "bullied and abused" and forced to work a later shift. Id. ¶¶ 17–18. In January of 2017, Drumheller's family physician, Dr. Ann Klecan, provided a typed letter requesting that Drumheller be scheduled for "no evening [or] late shifts . . . due to issues with chronic fatigue and other medical conditions contributing to concerns for safety with driving at night." Id. ¶ 19. The letter also included an initialed, handwritten note requesting that Drumheller work "no later than 2:30 p.m." Id.

On January 30, 2017, Food Lion issued a form notice granting Drumheller's requested accommodation under the ADA. See id. ¶ 20 (listing the requested accommodation as "[n]o working in the cold such as meat dept," "[n]o being confined to a cash register," and "no schedule past 2:30 PM"). At some point thereafter, however, Food Lion changed Drumheller's hours and asked her to work until 3:00 p.m. Id. ¶ 21. On May 18, 2017, Dr. Klecan provided a letter to "clarify" her position on Drumheller's work-related limitations. Id. ¶ 22. The typewritten portion of the letter stated, in pertinent part, as follows:

> . . . I had advised no evening/ late shifts. These limitations should continue indefinitely due to issues with chronic fatigue and other medication conditions contributing to concerns for safety with driving at night.

> This was interpreted as no working past 2:30 p.m. She is able to
> work until 3:30 p.m. but should not be working the 3-11 p.m. shift.
> I hope you will grant this accommodation . . . .

Id. ¶ 22. The letter also included an initialed, handwritten notation indicating that Drumheller would be able to work until 3:30 p.m. "only on Wednesday and Saturday." Id. After receiving the second letter from Dr. Klecan, Food Lion required Drumheller to "work until 3:00 p.m. and sometimes later." Id. ¶ 23.

Over the next several months, Drumheller's work environment continued to deteriorate. "Although Ruggerio was directed not to talk to [Drumheller], the abuse and nasty remarks continued." Id. ¶ 24. Drumheller alleges that she reported the continued harassment, but "Food Lion did nothing." Id.

On May 13, 2017, Drumheller met with the store manager, Mike Obaugh. Drumheller reported that she was still being bullied by Ruggerio, and asked that she not be required to have any further contact with Ruggerio at work. Id. ¶ 28. Obaugh denied Drumheller's request and advised her that he wanted her to try to get along with Ruggerio. Id.

Three days later, Ruggerio "started in on [Drumheller]" when the two employees crossed paths in the back room of the store. Id. ¶ 29. When Ruggerio turned away, Drumheller "raised her voice" at her. Id. Ruggerio then "ran to Obaugh and Obaugh reprimanded [Drumheller]" for raising her voice at Ruggerio. Id. That same day, Obaugh issued a performance counseling form directing Drumheller not to speak to Ruggerio. Id.

Drumheller alleges that she was subsequently subjected to increased harassment and intimidation. Id. ¶ 30. On or about June 11, 2017, Drumheller was disciplined again "for only working 20 HBC totes and for talking to a cashier (Nicky) about being upset." Id. Drumheller explains that she was upset because Simpson had advised her that two cashiers did not like her and

4

would "cringe when [Drumheller came] walking in the door." Id. (internal quotation marks omitted). Drumheller alleges that these "abusive personal attacks greatly upset her," and that "Simpson knew that [she] was disabled and did not handle stress well." Id.

When Drumheller subsequently met with Obaugh, he advised Drumheller that "he had reviewed the tape of her entire work day and that he was 'watching her,' which frightened [Drumheller] tremendously." Id. ¶ 31. Obaugh also allegedly told Drumheller that "she was 'terrible and there must be something wrong with [her].'" Id. Obaugh further suggested that Drumheller's "brain had 'big problems'" and that she "'better start acting right.'" Id.

In September of 2017, Drumheller received a final counseling form after co-workers reported seeing her looking through the window of a vehicle belonging to her ex-son-in-law. According to the form, Drumheller "started yelling at Josh Wheaton about how he needs to stay out of her business." Id. ¶ 32. However, Drumheller alleges that she did not yell at Wheaton or otherwise act in a disrespectful manner. Id.

Over the next several weeks, Drumheller continued to be ostracized by Obaugh, Simpson, Ruggerio, and other employees. Id. ¶ 33. When Drumheller asked Matt DeBose, an assistant store manager, for assistance, DeBose informed her that "nobody" wanted to help her, and that "[t]hey would rather punch out and go home." Id. (internal quotation marks omitted). DeBose's comments devastated Drumheller and she started crying. DeBose then followed Drumheller to her designated aisle and began "harassing [her] about Ruggiero and an incident that occurred on October 16, 2017, where Ruggerio yelled at [Drumheller] in the parking lot after work." Id. Drumheller "started shaking" and asked DeBose to leave her alone. Id. The incident was witnessed by a customer, who advised Drumheller to tell DuBose that the customer was not happy with what she saw. Id. ¶ 33. When Drumheller did so, "DuBose said, 'Don't talk to me unless

5

you have Human Resources with you.'" Id. ¶ 34. Drumheller alleges that "[n]o other employee was treated this way by management." Id. ¶ 33.

Drumheller decided to report DuBose to Human Resources. On October 20, 2017, John Furrow from Human Resources called the Food Lion store to speak to Drumheller. When Drumheller described the incident with DuBose, "Furrow claimed that DuBose had the right to treat [Drumheller] the way he did and to say the things he said." Id. ¶ 36. Furrow also advised Drumheller that he "wouldn't want to work where nobody liked me or even get up out of bed and go to work where nobody liked me," and that Drumheller would be fired if she received another disciplinary notice. Id.

Drumheller then decided to call Michael Craig, a district manager and Obaugh's boss. While she was on hold with Craig's office, "Castle picked up the phone [and] told [her] that DuBose had every right to speak [to her] the way he did," and that DuBose "was only telling [her] the truth." Id. ¶ 37. When Drumheller asked to speak to Craig, Castle advised her that Human Resources was already doing an investigation and that Craig "always agrees with HR." Id. (internal quotation marks omitted).

On October 23, 2017, Obaugh asked Drumheller to meet with him and Castle in Obaugh's office. Id. ¶ 39. During the meeting, Obaugh and Castle "started talking as if [Drumheller] was not even in the room, putting her down and falsely criticizing her performance." Id. For instance, Castle and Obaugh "falsely state[d] that she was slow, couldn't work fast enough, took too long making her orders, [and] spent too much time helping customers." Id. ¶ 40. Castle also indicated that another Food Lion store was "never going to want [Drumheller]," and that it would be best for her to remain at the Palmyra store since that store had "accommodated [her] with all [her] illness[es]." Id. (internal quotation marks omitted). Castle ended the meeting by advising

6

Drumheller that DuBose may not able to move up in the company as a result of her reporting him to Human Resources. Id.

Following the October 23, 2017 meeting, "DuBose continued to speak in such a hostile manner to [Drumheller] that she was always in tears." Id. ¶ 41. Likewise, "Ruggerio and her confederates continued their abuse and games." Id.

On November 26, 2017, Dubose approached Drumheller and asked her "why she could not work past 2:30 p.m." Id. ¶ 42. Drumheller "told DuBose that was between herself, her doctor and HR and he should not be asking her because she already told him the Doctor's note and accommodation was with HR." Id. Later that day, as Drumheller was preparing to leave work, DuBose informed her that everyone had warned him that she was an "HR nightmare." Id. (internal quotation marks omitted).

Two days later, on November 28, 2017, DuBose terminated Drumheller. Id. ¶ 43. When Drumheller asked why she was being fired, DuBose stated as follows: "I'm firing you because you didn't work 200pcs an hour yesterday. You had a 360pcs truck and I saw you bring that 6-wheeler back at 1:00 p.m. and I didn't see you pull anything else out there." Id. at 19. When DuBose responded that she had, in fact, "pull[ed] extra totes out in the morning on a small 6-wheeler from backstock," DuBose advised that another employee, Mike Franklin, had also reported observing Drumheller complaining to a customer about having to always wait on a truck. Id. DuBose informed Drumheller that he would have fired the day before, but he had to go through Human Resources. Id. Dubose then gave Drumheller a copy of her discharge papers, directed her to clean out her locker, and forbade her from shopping at the store. Id. He then escorted Drumheller from the premises. Id. ¶ 44.

7

## Procedural History

On December 7, 2018, Drumheller filed the instant action against Food Lion. Food Lion moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on March 27, 2019. On April 15, 2019, Drumheller filed an amended complaint as a matter of right, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). In Count I of the amended complaint, Drumheller claims that Food Lion failed to accommodate her disabilities in violation of the ADA, and retaliated against her for engaging in actions protected by the ADA and Title VII. In Count II, Drumheller claims that she was subjected to a hostile work environment in violation of the ADA. In Count III, Drumheller asserts a claim for defamation under Virginia law.

Food Lion has moved to dismiss the amended complaint under Rule 12(b)(6). The motion has been fully briefed and is ripe for disposition.[2]

## Standard of Review

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 663). "Threadbare recitals of the elements of a cause of action, supported by

---

[2] Both parties waived oral argument on the motion to dismiss.

8

mere conclusory statements, do not suffice" to plead a facially plausible claim. Iqbal, 556 U.S. at 678.

## Discussion

### I. Failure to Accommodate

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Such unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). For purposes of the ADA, "reasonable accommodations" may include "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B).

In order for a plaintiff to establish a prima facie case against her employer for failure to accommodate under the ADA, the plaintiff must demonstrate: (1) that she had a disability within the meaning of the statute; (2) that her employer had notice of her disability; (3) that with reasonable accommodations she could perform the essential functions of her position; and (4) that the employer refused to make such accommodations. Wilson, 717 F.3d at 345. "Although plaintiffs need not prove their prima facie case at the pleading stage, they must allege facts sufficient to state all the elements of [their] claim." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th Cir. 2018) (alteration in original) (internal quotation marks and citation omitted).

In moving to dismiss the claim for failure to accommodate, Food Lion does not challenge the sufficiency of the allegations with respect to the first three elements. Instead, Food Lion focuses on the fourth element, arguing that the amended complaint is devoid of facts that would

9

allow the court to reasonably infer that Food Lion denied a requested accommodation. Upon review of the amended complaint, the court agrees with Food Lion.

The amended complaint reveals that Drumheller first requested an accommodation in January of 2017, when her physician provided a letter indicating that Drumheller could not work "evening/ late shifts" or "later than 2:30 pm." Am. Compl. ¶ 19. Drumheller expressly acknowledges that Food Lion "granted" the requested accommodation. Id. ¶ 20. After Food Lion asked Drumheller to work until 3:00 p.m., her physician provided a follow-up letter in May of 2017, which clarified that Drumheller could work until 3:30 p.m. on Wednesday and Saturday, but should not be assigned to work the 3:00 p.m. to 11:00 p.m. shift. See id. ¶ 22.

Drumheller does not plausibly assert that Food Lion denied the modified request for accommodation. Although Drumheller vaguely states that Food Lion required her to work "until 3:00 p.m. and sometimes later," id. ¶ 23, she does not allege that Food Lion ever scheduled her to work the 3:00 p.m. to 11:00 p.m. shift after she submitted the letters from her physician. Nor does she allege that she was required to work later than her physician requested. As noted above, the follow-up letter from Drumheller's physician indicated that she could work until 3:30 p.m. on Wednesdays and Saturdays, and Drumheller does not allege that she was required to work late on other days of the week. Thus, even assuming that the accommodations identified in the physician's letters were reasonable, the amended complaint does not adequately plead that Food Lion denied the requested accommodations.[3] Accordingly, the motion to dismiss will be granted with respect to Drumheller's claim that Food Lion failed to accommodate her disabilities.

---

[3] Having reached this conclusion, the court need not address Food Lion's argument that it was not required to grant Drumheller's shift request in the first place, since it was intended to address driving-related concerns. Nonetheless, the court notes that at least two circuits have held that "employers may need to make reasonable shift changes in order to accommodate a disabled employee's disability-related difficulties in getting to [or from] work." Colwell v. Rite Aid Corp., 602 F.3d 495, 505 (3d Cir. 2000); see also Livingston v. Fred Meyers Stores, Inc., 388 F. App'x 738, 740 (9th Cir. 2010).

10

## II. Retaliation

The court next considers whether Food Lion is entitled to dismissal of Drumheller's ADA retaliation claim.[4] Drumheller contends that Food Lion retaliated against her for "complain[ing] about the misconduct of Food Lion employees and managers," and for "having exercised ... rights granted or protected by the ADA." Am. Compl. ¶ 47.

The ADA prohibits employers from retaliating against an employee for engaging in protected activity. 42 U.S.C. § 12203. To prevail on a claim of retaliation, a plaintiff "must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 577 (4th Cir. 2015). In moving to dismiss the retaliation claim, Food Lion focuses exclusively on the first element, arguing that "the amended complaint fails to allege that plaintiff engaged in a 'protected activity.'" Def.'s Br. Supp. Mot. Dismiss at 16. For the following reasons, the court is unpersuaded.

For purposes of the ADA, protected activity includes "oppos[ing] any act or practice made unlawful under [the ADA]," 42 U.S.C. § 12203(a), and "requesting an accommodation" for a disability, Jacobs, 780 F.3d at 577. See id. (observing that the plaintiff "clearly engaged in protected activity by submitting a request for an accommodation"); see also Hamilton v. Prince George's Cty. Police Dep't, No. 8:17-cv-02300, 2018 U.S. Dist. LEXIS 43774, at *16 (D. Md. Mar. 16, 2018) ("A request for accommodation is [a] paradigmatic protected activit[y] for ADA purposes.") (citing Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001)). In this

---

[4] In Count I of the amended complaint, Drumheller also asserts a claim of retaliation in violation of Title VII. However, Drumheller does not mention the Title VII claim in her response in opposition to Food Lion's motion to dismiss. Instead, Drumheller indicates that her retaliation claim is brought solely under the ADA. Accordingly, the Title VII retaliation claim will be dismissed without further discussion.

case, Drumheller alleges that she requested accommodations in January and May of 2017. Thus, Drumheller clearly engaged in at least one form of protected activity under the ADA.

The court believes that the more difficult question is whether Drumheller also engaged in protected activity by complaining about the harassment she allegedly endured from co-workers and managers. In a similar statutory context, the United States Court of Appeals for the Fourth Circuit has "articulated an expansive view of what constitutes [protected] oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (internal quotation marks and citation omitted) (addressing oppositional conduct under Title VII). Although the oppositional activity must be directed at a practice made unlawful under the anti-discrimination statute at issue, the Fourth Circuit has "made clear that [courts] should also interpret 'unlawful employment practice' broadly" and "examine the course of a plaintiff's conduct through a panoramic lens." Id. at 417–18 (citing Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (en banc)). Consequently, in determining whether an employee engaged in protected oppositional activity, "the touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, and (2) concerns subject matter that is actually unlawful under [the anti-discrimination statute] or that the employee reasonably believes to be unlawful." Id. (emphasis in original) (internal quotation marks and citations omitted).

Applying these principles, and viewing the amended complaint in the light most favorable to Drumheller, the court concludes that Drumheller has plausibly alleged that she engaged in protected oppositional activity by voicing complaints about harassment and verbal abuse by

co-workers and managers. It is well-established that the ADA "creates a cause of action for hostile work environment harassment." Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). Drumheller alleges that co-workers and managers were aware of her disabilities; that they increasingly harassed and bullied her at work; that managers made negative comments regarding her disabilities and her accommodation requests; that no other employees were treated in the same abusive manner; and that she complained about the ongoing harassment on multiple occasions. Although Drumheller does not allege that she specifically referenced the ADA or disability discrimination when complaining about the harassment, courts have recognized that complaints need not include "magic words" to be effective. Okoli v. City of Baltimore, 648 F.3d 216, 227 n.8 (4th Cir. 2011) (holding, for purposes of Title VII, that "it was enough for Okoli to twice complain of 'harassment'"). At this stage of the proceedings, the court is satisfied that Drumheller's complaints, as a whole, communicated the belief that she had been subjected to a form of employment discrimination, and that Drumheller has plausibly alleged that she directed her communications to practices that were actually unlawful under the ADA or that she reasonably believed to be unlawful. DeMasters, 796 F.3d at 420.

For these reasons, the court concludes that Drumheller has adequately pled that she engaged in protected activity for purposes of advancing a claim of retaliation under the ADA. Accordingly, Food Lion's motion to dismiss will be denied with respect to this claim.

### III. Hostile Work Environment

The court now turns to Drumheller's claim that the harassment and verbal abuse by co-workers and managers constituted a hostile work environment in violation of the ADA. As indicated above, hostile work environment claims are cognizable under the ADA. Fox, 247 F.3d at 176. To state such a claim, a plaintiff must allege facts sufficient to satisfy the following

13

elements: (1) that she is a qualified individual with a disability; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her disability; (4) that the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) that some factual basis exists to impute liability for the harassment to the employer. Id. at 177.

In moving to dismiss the hostile work environment claim, Food Lion focuses exclusively on the third element, arguing that "the amended complaint does not allege any facts to suggest that [Drumheller] experienced any harassment because of her disability." Def.'s Br. Supp. Mot. Dismiss 13. For the following reasons, the court is unpersuaded.

The Fourth Circuit has explained that "[t]he critical issue for consideration in the 'because of' inquiry is whether a disabled plaintiff has been 'exposed to disadvantageous terms or conditions of employment to which [nondisabled employees] are not exposed.'" Mason v. Wyeth, Inc., 183 F. App'x 353, 361 (4th Cir. 2006) (quoting Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc)). Unlike the plaintiff in Mason, Drumheller expressly asserts that she was the "sole target" of the alleged harassment and verbal abuse by co-workers and managers. Id.; see also id. at 362 ("Mason does not claim that he alone was singled out."). Drumheller alleges that other Food Lion employees were aware of her disabilities; that she was subjected to increased harassment and intimidation over the course of 2016 and 2017, which included negative comments regarding her cognitive function and requested accommodations; and that "[n]o other employee" was treated in such a hostile and/or abusive manner. Am. Compl. ¶ 33; see also id. ¶ 31 ("Obaugh also told [Drumheller] she was 'terrible and there must be something wrong with [her].' Obaugh said [Drumheller's] brain had 'big problems' and [she] 'definitely better start acting right.'"); id. ¶ 40 ("Castle said that 'since another

store is never going to want you and we have accommodated you with all your illness[es] and helped you it's probably best if you stay here.'"); id. ¶ 42 ("Dubose asked [Drumheller] why she could not work past 2:30 p.m.," and "said to her, 'When I first came to work here, everybody told me you were [an] HR nightmare.'").

In sum, Drumheller claims that she was subjected to a hostile work environment because of her disabilities, and the factual allegations in the amended complaint allow the court to draw such an inference. Accordingly, Food Lion's motion to dismiss will be denied with respect to this claim.

IV. **Defamation**

In addition to her ADA claims, Drumheller asserts a claim for defamation under Virginia law, based on statements made prior to her termination on November 28, 2017. In response to Food Lion's motion, Drumheller acknowledges that this claim, as alleged in the amended complaint, is barred by the applicable statute of limitations. See Va. Code Ann. § 8.01-247.1 ("Every action for injury resulting from . . . defamation shall be brought within one year after the cause of action accrues."); Askey v. Collins, 722 S.E.2d 249, 252 (2012) ("Any cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred."). Notwithstanding this concession, Drumheller seeks to avoid the statute of limitations problem by informally requesting leave to amend her complaint a second time, based on her "belie[f]" that "false statements" were "republish[ed]" by "Food Lion store managers and employees" within the limitations period. Pl.'s Br. Opp'n 15, Dkt. No. 16.

"A party may amend its pleading once as a matter of course" within "21 days after service of a responsive leading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). "After that time, a party may only amend its pleading

15

with the consent of the opposing party or with leave of the court, and '[t]he court should freely give leave when justice so requires.'" Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). "Courts may deny leave to amend a pleading if the amendment would [be] futile." Id. Additionally, "a district court does not abuse its discretion by declining to grant a request to amend when it is not properly made as a motion." ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 218 (4th Cir. 2019).

Here, in addition to being procedurally improper, the proposed amendment, as described in Drumheller's brief, would be futile since "the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, 914 F.3d at 228. In short, Drumheller's speculative belief that Food Lion managers and employees republished false statements about her within the limitations period is insufficient to withstand dismissal under Rule 12(b)(6). See Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) ("To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiffs' [f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'") (quoting Twombly, 550 U.S. at 555, 570)). Accordingly, Drumheller's request for leave to amend is denied, and the defamation claim asserted in the amended complaint will be dismissed.

### Conclusion

For the reasons stated, Food Lion's motion to dismiss the amended complaint will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 30th day of January, 2020.

_____
Senior United States District Judge

16